*0260357794L09551222202001*

# PROMISSORY NOTE

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $35,000,000.00 | 12-22-2020 | 12-22-2025 | [redacted]794 | 4A / 00 | | DMP | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.

Any item above containing "***" has been omitted due to text length limitations.

**Borrower:** GREENBRIER HOTEL CORPORATION (TIN: [redacted]133)
101 MAIN STREET W
WHITE SULPHUR SPRINGS, WV 24986

**Lender:** FIRST GUARANTY BANK
Denham Springs Banking Center
2231 South Range Avenue
Denham Springs, LA 70726
(225) 791-7964

**Principal Amount: $35,000,000.00** **Date of Note: December 22, 2020**

**PROMISE TO PAY.** **GREENBRIER HOTEL CORPORATION ("Borrower") promises to pay to the order of FIRST GUARANTY BANK ("Lender"), in lawful money of the United States of America the sum of Thirty-five Million & 00/100 Dollars (U.S. $35,000,000.00), together with simple interest assessed on a variable rate basis as provided in the "VARIABLE INTEREST RATE" paragraph, with interest being assessed on the unpaid principal balance of this Note as outstanding from time to time, commencing on December 22, 2020, and continuing until this Note is paid in full.**

**PAYMENT.** **Subject to any payment changes resulting from changes in the Index, Borrower will pay this loan in accordance with the following payment schedule:**

> **Interest accruing on the unpaid principal balance of this Note shall be payable as follows: No interest payments will be required during the first year of this Note. On December 22, 2021, all interest that accrued during the first year of this Note shall be capitalized and added for all purposes to the principal owing hereunder, and such capitalized interest shall thenceforth bear interest at the adjustable interest rate provided in this Note (including any default rate of interest). Thereafter, Borrower shall pay interest as it accrues on the unpaid principal balance of this Note (including interest accruing on such capitalized interest) in monthly installments commencing on January 22, 2022 and continuing on the same day of each month thereafter for so long as amounts remain outstanding under this Note.**
>
> **Principal outstanding under this Note (including interest capitalized in accordance with the preceding paragraph) shall be payable in three installments: (a) the first amortization payment is due on December 22, 2023 in the amount of 15% of the outstanding principal balance of the loan (including any capitalized interest), (b) the second amortization payment is due on December 22, 2024 in the amount of 15% of the outstanding principal balance of the loan (including any capitalized interest) and (c) the remainder of the outstanding principal balance of the loan is due on the maturity date (i.e. December 22, 2025).**

Unless otherwise agreed or required by applicable law, payments will be applied first to any accrued unpaid interest; then to principal; then to any unpaid collection costs; and then to any late charges. **Borrower will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing.**

**VARIABLE INTEREST RATE.** The interest rate on this Note is subject to change from time to time based on changes in an independent index which is the 3 Month London Interbank Offered Rate (LIBOR) as published monthly at http://www.fedprimerate.com/libor/index.html. (the "Index"). The Index is not necessarily the lowest rate charged by Lender on its loans. Lender will tell Borrower the current Index rate upon Borrower's request. The interest rate change will not occur more often than each Quarter. Borrower understands that Lender may make loans based on other rates as well. **The Index currently is 0.228% per annum.** Interest on the unpaid principal balance of this Note will be calculated as described in the "INTEREST CALCULATION METHOD" paragraph using a rate of 3.000 percentage points over the Index (the "Margin"), resulting in an initial rate of 3.228% per annum based on a year of 360 days. If Lender determines, in its sole discretion, that the Index has become unavailable or unreliable, either temporarily, indefinitely, or permanently, during the term of this loan, Lender may amend this Note by designating a substantially similar substitute index. Lender may also amend and adjust the Margin to accompany the substitute index. The change to the Margin may be a positive or negative value, or zero. In making these amendments, Lender may take into consideration any then-prevailing market convention for selecting a substitute index and margin for the specific Index that is unavailable or unreliable. Such an amendment to the terms of this Note will become effective and bind Borrower 10 business days after Lender gives written notice to Borrower without any action or consent of the Borrower. Under no circumstances will the interest rate on this Note be more than the maximum rate allowed by applicable law.

**INTEREST CALCULATION METHOD.** **Interest on this Note is computed on a 365/360 basis; that is, by applying the ratio of the interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. All interest payable under this Note is computed using this method. This calculation method results in a higher effective interest rate than the numeric interest rate stated in this Note.**

**PREPAYMENT.** Other than Borrower's obligation to pay any prepayment penalty, Borrower may prepay this Note in full at any time by paying the then unpaid principal balance of this Note, plus accrued simple interest and any unpaid late charges through date of prepayment. If Borrower prepays this Note in full, or if Lender accelerates payment, Borrower understands that, unless otherwise required by law, any prepaid fees or charges will not be subject to rebate and will be earned by Lender at the time this Note is signed. Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments under the payment schedule. Rather, early payments will reduce the principal balance due and may result in Borrower's making fewer payments. Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language. If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Note, and Borrower will remain obligated to pay any further amount owed to Lender. **All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: FIRST GUARANTY BANK, 400 East Thomas Street, P . O. Box 2009 Hammond, LA 70404-2009.**

**LATE CHARGE.** If Borrower fails to pay any payment under this Note in full within 10 days of when due, Borrower agrees to pay Lender a late payment fee in an amount equal to 5.000% of the unpaid portion of the regularly scheduled payment or $25.00, whichever is greater with a maximum of $250.00. Late charges will not be assessed following declaration of default and acceleration of the maturity of this Note.

**INTEREST AFTER DEFAULT.** If Borrower defaults under this Note, Lender shall have the right to prospectively increase the interest rate under this Note to 21.000% per annum based on a year of 360 days until this Note is paid in full.

**DEFAULT.** Each of the following shall constitute an event of default ("Event of Default") under this Note:

> **Payment Default.** Borrower fails to make any payment when due under this Note.
>
> **Default Under Security Agreements.** Should Borrower or any guarantor violate, or fail to comply fully with any of the terms and conditions of, or default under any security right, instrument, document, or agreement directly or indirectly securing repayment of this Note.
>
> **Other Defaults in Favor of Lender.** Should Borrower or any guarantor of this Note default under any other loan, extension of credit, security right, instrument, document, or agreement, or obligation in favor of Lender.
>
> **Default in Favor of Third Parties.** Should Borrower or any guarantor default under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may affect any property or other collateral directly or indirectly securing repayment of this Note.
>
> **Insolvency.** Should the suspension, failure or insolvency, however evidenced, of Borrower or any Guarantor of this Note occur or exist.
>
> **Death or Interdiction.** Should any guarantor of this Note die or be interdicted.

**Readjustment of Indebtedness.** Should proceedings for readjustment of indebtedness, reorganization, bankruptcy, composition or extension under any insolvency law be brought by or against Borrower or any guarantor.

**Assignment for Benefit of Creditors.** Should Borrower or any guarantor file proceedings for a respite or make a general assignment for the benefit of creditors.

**Receivership.** Should a receiver of all or any part of Borrower's property, or the property of any guarantor, be applied for or appointed.

**Dissolution Proceedings.** Proceedings for the dissolution or appointment of a liquidator of Borrower or any guarantor are commenced.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Note or the related documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Material Adverse Change.** Should any material adverse change occur in the financial condition of Borrower or any guarantor of this Note or should any material discrepancy exist between the financial statements submitted by Borrower or any guarantor and the actual financial condition of Borrower or such guarantor.

**Insecurity.** Lender in good faith believes itself insecure with regard to repayment of this Note.

**LENDER'S RIGHTS UPON DEFAULT.** Should any one or more default events occur or exist under this Note as provided above, Lender shall have the right, at Lender's sole option, to declare formally this Note to be in default and to accelerate the maturity and insist upon immediate payment in full of the unpaid principal balance then outstanding under this Note, plus accrued interest, together with reasonable attorneys' fees, costs, expenses and other fees and charges as provided herein. Lender shall have the further right, again at Lender's sole option, to declare formal default and to accelerate the maturity and to insist upon immediate payment in full of each and every other loan, extension of credit, debt, liability and/or obligation of every nature and kind that Borrower may then owe to Lender, whether direct or indirect or by way of assignment, and whether absolute or contingent, liquidated or unliquidated, voluntary or involuntary, determined or undetermined, secured or unsecured, whether Borrower is obligated alone or with others on a "solidary" or "joint and several" basis, as a principal obligor or otherwise, all without further notice or demand, unless Lender shall otherwise elect.

**ATTORNEYS' FEES; EXPENSES.** If Lender refers this Note to an attorney for collection, or files suit against Borrower to collect this Note, or if Borrower files for bankruptcy or other relief from creditors, Borrower agrees to pay Lender's reasonable attorneys' fees in an amount not exceeding 25.000% of the principal balance due on the loan.

**GOVERNING LAW. This Note will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Louisiana without regard to its conflicts of law provisions. This Note has been accepted by Lender in the State of Louisiana.**

**RETURNED ITEM CHARGE.** In the event that Borrower makes any payment under this Note by check or electronic payment and Borrower's check or electronic payment is returned to Lender unpaid for any reason, Borrower agrees to pay Lender a returned item charge in an amount of $25.00 or 5.000% of the dishonored item (whether check or electronic payment), whichever is less.

**DEPOSIT ACCOUNTS.** As collateral security for repayment of this Note and all renewals and extensions, as well as to secure any and all other loans, notes, indebtedness and obligations that Borrower may now and in the future owe to Lender or incur in Lender's favor, whether direct or indirect, absolute or contingent, due or to become due, of any nature and kind whatsoever (with the exception of any indebtedness under a consumer credit card account), and to the extent permitted by law, Borrower is granting Lender a continuing security interest in any and all funds that Borrower may now and in the future have on deposit with Lender or in certificates of deposit or other deposit accounts as to which Borrower is an account holder (with the exception of IRA, pension, and other tax-deferred deposits). Borrower further agrees that, to the extent permitted by law, Lender may at any time apply any funds that Borrower may have on deposit with Lender or in certificates of deposit or other deposit accounts as to which Borrower is an account holder against the unpaid balance of this Note and any and all other present and future indebtedness and obligations that Borrower may then owe to Lender, in principal, interest, fees, costs, expenses, and reasonable attorneys' fees.

**COLLATERAL.** Collateral securing other loans with Lender may also secure this Note as the result of cross-collateralization.

**FINANCIAL STATEMENTS.** Borrower agrees to provide Lender with such financial statements and other related information at such frequencies and in such detail as Lender may reasonably request.

**WAIVERS.** Borrower and each guarantor of this Note hereby waive demand, presentment for payment, protest, notice of protest and notice of nonpayment, and all pleas of division and discussion, and severally agree that their obligations and liabilities to Lender hereunder shall be on a "solidary" or "joint and several" basis. Borrower and each guarantor further severally agree that discharge or release of any party who is or may be liable to Lender for the indebtedness represented hereby, or the release of any collateral directly or indirectly securing repayment hereof, shall not have the effect of releasing any other party or parties, who shall remain liable to Lender, or of releasing any other collateral that is not expressly released by Lender. Borrower and each guarantor additionally agree that Lender's acceptance of payment other than in accordance with the terms of this Note, or Lender's subsequent agreement to extend or modify such repayment terms, or Lender's failure or delay in exercising any rights or remedies granted to Lender, shall likewise not have the effect of releasing Borrower or any other party or parties from their respective obligations to Lender, or of releasing any collateral that directly or indirectly secures repayment hereof. In addition, any failure or delay on the part of Lender to exercise any of the rights and remedies granted to Lender shall not have the effect of waiving any of Lender's rights and remedies. Any partial exercise of any rights and/or remedies granted to Lender shall furthermore not be construed as a waiver of any other rights and remedies; it being Borrower's intent and agreement that Lender's rights and remedies shall be cumulative in nature. Borrower and each guarantor further agree that, should any default event occur or exist under this Note, any waiver or forbearance on the part of Lender to pursue the rights and remedies available to Lender, shall be binding upon Lender only to the extent that Lender's specifically agrees to any such waiver or forbearance in writing. A waiver or forbearance on the part of Lender as to one default event shall not be construed as a waiver or forbearance as to any other default. Borrower and each guarantor of this Note further agree that any late charges provided for under this Note will not be charges for deferral of time for payment and will not and are not intended to compensate Lender's for a grace or cure period, and no such deferral, grace or cure period has or will be granted to Borrower in return for the imposition of any late charge. Borrower recognizes that Borrower's failure to make timely payment of amounts due under this Note will result in damages to Lender, including but not limited to Lender's loss of the use of amounts due, and Borrower agrees that any late charges imposed by Lender hereunder will represent reasonable compensation to Lender for such damages. Failure to pay in full any installment or payment timely when due under this Note, whether or not a late charge is assessed, will remain and shall constitute an Event of Default hereunder.

**SUCCESSORS AND ASSIGNS LIABLE.** Borrower's and each guarantor's obligations and agreements under this Note shall be binding upon Borrower's and each guarantor's respective successors, heirs, legatees, devisees, administrators, executors and assigns. The rights and remedies granted to Lender under this Note shall inure to the benefit of Lender's successors and assigns, as well as to any subsequent holder or holders of this Note.

**CAPTION HEADINGS.** Caption headings in this Note are for convenience purposes only and are not to be used to interpret or define the provisions of this Note.

**SEVERABILITY.** If any provision of this Note is held to be invalid, illegal or unenforceable by any court, that provision shall be deleted from this Note and the balance of this Note shall be interpreted as if the deleted provision never existed.

**SUCCESSOR INTERESTS.** The terms of this Note shall be binding upon Borrower, and upon Borrower's successors, heirs, legatees, devisees, administrators, executors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

**APPLICABLE LENDING LAW.** To the extent not preempted by federal law, this business or commercial loan is being made under the terms and provisions of La. R.S. 9:3509, et seq.

**PRIOR TO SIGNING THIS NOTE, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE, INCLUDING THE VARIABLE INTEREST RATE PROVISIONS.**

**BORROWER:**

**GREENBRIER HOTEL CORPORATION**

**By:** ______________________ [signature]

JILLEAN LEIGH JUSTICE, President/Director of
GREENBRIER HOTEL CORPORATION

LaserPro, Ver. 20.2.0.043 Copr. Finastra USA Corporation 1997, 2020. All Rights Reserved. - LA C:\LOANS\CFI\LPL\D20.FC TR-91885 PR-174 (M)