**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF WEST VIRGINIA**

| | |
|---|---|
| FIRST GUARANTY BANK,<br><br>Plaintiff,<br><br>v.<br><br>GREENBRIER HOTEL CORPORATION,<br><br>Defendant. | Case No.: 5:25-cv-00687<br><br>Hon. Frank W. Volk, Chief Judge |

# PROPOSED INTEGRATED PRETRIAL ORDER

In accordance with Rule 16.7 of the Local Rules of Civil Procedure for the Southern District of West Virginia, Rule 16 of the Federal Rules of Civil Procedure, and the Court's Scheduling Order dated June 17, 2026 (ECF 63), First Guaranty Bank ("FGB")[1] and Greenbrier Hotel Corporation ("Greenbrier")[2] jointly submit this Proposed Integrated Pretrial Order.

---

[1] Greenbrier Hotel Corporation has asserted a counterclaim and is both a defendant and counterclaim plaintiff.

[2] As set forth in the parties' Stipulation and Request to So-Order Substituting Greenbrier Hotel, LLC as Defendant and Amending Caption (ECF 86), Greenbrier has changed its legal name to Greenbrier Hotel, LLC. Because the request to so-order the stipulation remains pending, the parties refer to the defendant entity as Greenbrier Hotel Corporation in this Proposed Integrated Pretrial Order.

## I. Pretrial Disclosures and Objections

### A. FGB[3]

1. FGB expects to call the following witnesses at trial:

   a. Jane Muehlbauer in her personal capacity and potentially as a corporate representative of FGB.
   c/o FGB's counsel

2. FGB may call the following witnesses at trial if the need arises, including:

   a. Other corporate representative(s) of FGB may testify on FGB's behalf concerning the disputes raised in the parties' pleadings.

   b. Additional witnesses for purposes of rebuttal or impeachment.

   c. Additional witnesses, if any, necessary to authenticate documents.

   d. Any witnesses identified by FGB in its Rule 26(a)(1) or (3) disclosures or in response to Greenbrier's interrogatories.

   e. Any witness identified by Greenbrier in (i) its Rule 26(a)(1) or (3) disclosures, (ii) its responses and supplemental responses to FGB's interrogatories, to the extent such witnesses are permitted to testify, and (iii) Section I.B below, concerning the witnesses it expects to call and may call at trial, to the extent such witnesses are permitted to testify.

   f. Any witness called by Greenbrier, to the extent such witness is permitted to testify.

   g. Evan Singer
   c/o FGB's counsel

   h. Samuel J. Gallo

---

[3] FGB reserves its rights to amend its expected and potential witnesses and exhibits, depending on, inter alia: (i) any permitted amendments to Greenbrier's expected and potential witnesses and exhibits; (ii) the Court's rulings on the admissibility of evidence, arguments, or claims; and (iii) the Court's ruling on FGB's motion for summary judgment (ECF 71 – 74) (the "Summary Judgment Motion"). FGB further reserves the right to amend or supplement its witness and exhibit lists to identify additional witnesses or exhibits that may be required for rebuttal or impeachment purposes, and to present direct testimony via affidavit.

c/o FGB's counsel

3. FGB does not intend to present testimony by way of deposition. But FGB reserves the right to use any witness's deposition transcript at trial in accordance with the Federal Rules of Civil Procedure, the Local Rules of Civil Procedure for the Southern District of West Virginia, and this Court's Orders. Except when being used solely for impeachment purposes, FGB will supply the parties with the transcript page and line numbers as soon as possible. FGB also reserves its right to present testimony by way of deposition if a witness is unavailable to testify in person.

4. FGB expects to offer as exhibits during its case in chief:

   a. Loan documents executed by Greenbrier on December 22 and 23, 2020, including the: (i) Promissory Note (FGB_0003882-84); (ii) Addendum to Promissory Note For Use with MSNLF or MSPLF Loans (FGB_0003877-78); (iii) Main Street Priority Loan Facility Borrower Certifications and Covenants (FGB_0003842-59); (iv) Co-lender Agreement (FGB_0000098-103); (v) Assignment and Assumption for the Main Street Lending Program (FGB_0000003-08); (vi) Corporate Resolution to Borrow / Grant Collateral (FGB_0003874-75); (vii) Certification of Beneficial Owner (FGB_0003876); (viii) Disbursement Request and Authorization (FGB_0003888); (ix) Notice of Final Agreement (FGB_0003879); and (x) Credit Agreement letter with transmittal email (GREENBRIER_0001512-16).

   b. Emails between FGB and Greenbrier in 2021 concerning the treatment of interest under the loan (GREENBRIER_003756-57; FGB_0003641-43).

   c. Change in Terms Agreement dated June 22, 2023. (FGB_0003816).

   d. FGB's loan transcript / account history for the loan at issue. (FGB_0003630; FGB_0003924).

   e. FGB's calculation of its damages, including all principal, interest, and late charges owed.

   f. FGB's and Greenbrier's records of payments made by Greenbrier with respect to the loan at issue. (FGB_0003630; FGB_0003924; Greenbrier_0000584).

   g. Demonstratives.

5. FGB may introduce the following exhibits during trial if the need arises, including in response to Greenbrier's counterclaim:

   a. Transaction reports for the Main Street Lending Program from the Federal Reserve Bank of Boston.

   b. To the extent admissible, internal emails of FGB or Greenbrier concerning the loan issue.

   c. To the extent admissible, correspondence between FGB and Greenbrier concerning the loan at issue, including any attachments to the same.

   d. To the extent admissible, emails between FGB and the Federal Reserve Bank of Boston and/or MS Facilities 2020, LLC concerning the loan at issue.

   e. Deposition transcripts, or excerpts of any deposition transcript, for any witness deposed in this action.

   f. To the extent admissible, any exhibits proffered by Greenbrier at trial.

   g. Any other exhibits for impeachment or rebuttal purposes.

   h. All exhibits submitted in connection with the Summary Judgment Motion.

   i. All exhibits to the depositions of Michael Mineer, James Justice III, Jillean Justice, Steve Ball, and Adam Long.

   j. The pleadings, affidavits, filings, and discovery requests and responses in this action.

   k. Documents concerning the 2026 transaction between Kennedy Lewis Investment Management and Greenbrier / its affiliates.

   l. Priority Loan Borrower Certifications and Covenants executed by Greenbrier.

   m. To the extent admissible, any documents produced by any party in this action.

6. FGB's objections to Greenbrier's expected and potential witnesses:

    a. FGB objects to Greenbrier's witness list to the extent Greenbrier's witnesses proffer testimony that is unnecessarily duplicative or cumulative.

    b. FGB objects to Greenbrier's introduction of any calculation of its damages other than the calculation provided to FGB in Greenbrier's Rule 26(a)(1) initial disclosures or its responses to interrogatories. Rule 26(a)(1) contains mandatory disclosure obligations that required Greenbrier to produce "a computation of each category of damages claimed by the disclosing party--who ***must also make available for inspection and copying as under Rule 34 the documents or other evidentiary material***, unless privileged or protected from disclosure, ***on which each computation is based***, ***including materials bearing on the nature and extent of injuries suffered***." Fed. R. Civ. P. 26(a)(1)(A)(iii) (emphasis added). Instead of producing documents on which its damages "computation is based," and "materials bearing on the nature and extent of injuries suffered," Greenbrier's initial disclosures provided a "[p]reliminary estimate of damages incurred by [Greenbrier] as a result of restrictions imposed by the improper addendum." (Greenbrier's Rule 26(a)(1) Initial Disclosures). That estimate consists entirely of the below chart:

| | Current | If Refinanced |
|---|---|---|
| | 301,000,000 | 301,000,000 |
| Interest Rate | 10.75% | 7.50% |
| Annual Interest | 32,357,500 | 22,575,000 |
| Difference | 9,782,500 | |
| Years | 5 | |
| Total | 48,912,500 | |
| | | |

    Greenbrier provided the same "preliminary estimate" in response to FGB's discovery requests to: (i) identify the "existing and other potential banking relationships" purportedly damaged due to the loan's negative pledge, with supporting quantifications of those damages;" and (ii) "[i]temize and show how You calculate any economic damages claimed by You in this action, and describe any non-economic damages claimed." Greenbrier was obligated to supplement its Rule 26(a)(1) disclosures under Rule 26(e).

Under Rule 37(c)(1), if "a party fails to provide information . . . as required by Rule 26(a) or (e)," that party "is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." This "automatic sanction," *Campbell v. United States*, 470 F. App'x 153, 156 (4th Cir. 2012), applies to failures to disclose damages information required under Rule 26(a) or (e). *E.g.*, *Moke Am. LLC v. Am. Custom Golf Cars, Inc.*, No. 3:20CV400 (DJN), 2023 WL 3686963, at *3 (E.D. Va. Jan. 11, 2023) (precluding evidence of damages in bench trial due to failures to provide mandatory damages disclosures and in response to discovery requests).

c. FGB objects to Greenbrier calling a corporate representative of Ares. Greenbrier's initial Rule 26(a)(1) disclosures and its pretrial Rule 26(a)(3) disclosures do not identify a representative of Ares as a potential witness. During discovery, FGB repeatedly requested that Greenbrier produce "All Documents Concerning any loan or refinancing applications that [Greenbrier] contend[s] were denied due to the inclusion of the Addendum to the Promissory Note and/or any conduct by Plaintiff, including but not limited to all applications, rejection notifications, and related Communications with the prospective lender," and "All Documents Concerning or evidencing any economic damages that you claim in this action." Greenbrier's initial response to these requests was "The Defendant continues to search for its files and will update this response as appropriate." FGB moved to compel the discovery or to obtain sanctions. The Court then ordered Greenbrier to "either produce the responsive materials or . . . affirmatively respond that there are no responsive materials to these outstanding discovery requests no later than end of business on July 15, 2026." (ECF 65). On July 15, Greenbrier produced supplemental responses to FGB's document requests that referred to and attached six emails between Greenbrier and its consultant (Adam Lerrick). Mr. Lerrick is not affiliated with Ares. The six emails discussed Mr. Lerrick's views of the parties' loan and purported to describe some statements from Ares. Greenbrier has never produced any communications with Ares (or any other potential lender or refinancer). Greenbrier has never produced any loan or refinancing applications or rejection notifications from Ares. And Greenbrier has never produced any term sheet or other document setting forth the terms of any loan or refinancing with Ares. Greenbrier should be precluded from proffering Ares as a witness at trial due to its discovery violations and as an automatic sanction under Rule 37(c)(1).

d. FGB objects to Greenbrier's potential witnesses who are or were employees or representatives of FGB to the extent that such witnesses are outside of the Court's subpoena power for purposes of trial.

e. FGB objects to calling a corporate representative of Marblegate Asset Management, 1914 Acquisition LLC, or any affiliate thereof, as, inter alia, not included in Greenbrier's pretrial Rule 26(a)(3) disclosures and lacking information relevant to the parties' dispute and to the extent such witnesses are outside of the Court's subpoena power for purposes of trial.

7. FGB's objections to Greenbrier's expected and potential exhibits:

a. FGB reserves the right to assert any objections to Greenbrier's expected and potential exhibits at trial depending on the purpose for which such exhibits are submitted.

b. FGB objects to Greenbrier's exhibits to the extent they constitute inadmissible hearsay or hearsay within hearsay, including ECF 73.8, 73.9, and 73.11.

c. FGB objects to Greenbrier's exhibits to the extent they lack proper authentication or a proper foundation, including ECF 73.8, 73.9, and 73.11.

d. FGB reserves its right to object at trial to dispute whether a particular document submitted by Greenbrier is a "loan document."

e. FGB objects to any exhibits proffered by Greenbrier to the extent such exhibits violate the parties' stipulations in this action.

**B. Greenbrier**

1. Greenbrier expects to call the following witnesses at trial:

a. Michael R. Mineer, First Guaranty Bank.

b. Adam Long, Greenbrier Hotel Corporation.

c. James C. Justice, III, Greenbrier Hotel Corporation.

d. Steve Ball, Greenbrier Hotel Corporation.

e. Jill Justice, Greenbrier Hotel Corporation.

2. Greenbrier may call the following witnesses, if the need arises:

   a. Dev Patel, First Guaranty Bank.

   b. Alton Lewis, First Guaranty Bank.

   c. Randy Vicknair, First Guaranty Bank.

   d. Marshall Reynolds, First Guaranty Bank.

   e. Adam Lerrick (lerrco@msn.com).

   f. Ares corporate representative.

   g. Corporate representative of the Boston Federal Reserve.

   h. Corporate representative of MS Facilities 2020 LLC, and/or any predecessor or successor entity or affiliate.

   i. Corporate representative of Marblegate Asset Management, 1914 Acquisition LLC, and/or any affiliate thereof.

   j. Any witness identified by Plaintiff.

   k. Any witness necessary for impeachment or rebuttal.

3. Greenbrier does not expect or intend to present testimony by deposition. Greenbrier reserves the right to use any witness's deposition transcript at trial in accordance with the Federal Rules of Civil Procedure, the Local Rules of Civil Procedure for the Southern District of West Virginia, and this Court's Orders. Except when being used solely for impeachment purposes, Greenbrier will supply the parties with the transcript page and line numbers as soon as possible. Greenbrier also reserves its right to present testimony by way of deposition if a witness is unavailable to testify in-person.

4. Greenbrier expects to offer the following exhibits on its own behalf:

a. Emails between Jay Justice and Michael Mineer (Doc. 73-1).

b. Emails between Jay Justice and Michael Mineer (Doc. 73-2).

c. Emails between Jay Justice and Michael Mineer (Doc. 73-3).

d. Emails between Jay Justice and Michael Mineer (Doc. 73-4).

e. New Loan Borrower Certifications and Covenants executed by Greenbrier (Doc. 73-7).

f. Emails between Jay Justice and Adam Lerrick (Doc. 73-8).

g. Emails between Jay Justice and Adam Lerrick (Doc. 73-9).

h. Emails between Jay Justice and Dev Patel (Doc. 73-10).

i. Emails between Jay Justice and Adam Lerrick (Doc. 73-11).

5. Defendant may offer the following exhibits, if the need arises:

a. All other loan documents.

b. Other correspondence between the parties concerning negotiation, terms, and modification of the loan agreement.

c. Documents or information concerning terms and conditions of the Main Street Loan Program.

d. Any document produced or identified by Plaintiff.

e. Any document necessary for impeachment or rebuttal.

6. Greenbrier's objections to FGB's expected and potential exhibits:

a. Greenbrier reserves the right to assert any objections to FGB's expected and potential exhibits at trial depending on the purpose for which such exhibit is submitted.

b. Greenbrier objects to any exhibits proffered by FGB to the extent such exhibit violates the parties' stipulations in this action.

## II. Contested Issues of Law Requiring Determination Before Trial

### A. FGB

The Summary Judgment Motion (ECF 71 – 74) requires a ruling before trial.

If Greenbrier attempts to assert a new counterclaim besides breach of the implied covenant of good faith and fair dealing, FGB will likely seek to preclude such counterclaim(s) in advance of trial.

### B. Greenbrier

FGB's Summary Judgment Motion (ECF 71 – 74) requires a ruling before trial.

## III. Statement of Claims and Defenses, and Brief Summary of Material Facts and Theories of Liability or Defense

### A. FGB[4]

#### i. FGB's Claim

In December 2020, FGB issued a $35 million loan to Greenbrier pursuant to the federal Main Street Lending Program. (FGB_0003882-84). The loan was governed by written loan documents executed on December 22 and 23, 2020, including, among other things, a Promissory Note (FGB_0003882-84), an Addendum to Promissory Note For Use with MSNLF or MSPLF Loans (FGB_0003877-78), Main Street Priority Loan Facility Borrower Certifications and Covenants (FGB_0003824-59), and a Notice of Final Agreement (FGB_0003879). The loan documents were executed by officers of Greenbrier, including Greenbrier's President (Jillean Justice). (Jillean Justice Dep. 20:9-22). At her deposition, Ms. Justice testified that she failed to read the loan documents before executing them. (Jillean Justice Dep. 17:7-18, 19:8-24, 20:9-21:17,

---

[4] The factual and legal basis for FGB's claims and defenses to Greenbrier's counterclaim are discussed in more detail in the Summary Judgment Motion and FGB's forthcoming Proposed Findings of Fact and Conclusions of Law.

25:14-26:20, 27:3-18). Greenbrier's other deponents (James Justice III, Adam Long, and Steve Ball) testified similarly. (*E.g.*, Ball Dep. 12:7-9; Long Dep. 31:2-9; James Justice III Dep. 24:4-25:3). Mr. Long and Mr. Ball are both licensed attorneys in West Virginia. (Ball Dep. 8:10-19; Long Dep. 11:13-21).

The loan documents required Greenbrier to repay the loan principal in three installments on December 22, 2023, December 22, 2024, and at maturity on December 22, 2025. (FGB_0003882). Greenbrier failed to make the first principal installment (or any further principal installment) when due, and it has breached its obligations under the loan documents since at least December 22, 2023. (*See*, *e.g.*, Greenbrier_0000584). In total, Greenbrier has paid only ~$6 million to FGB with respect to the loan, and Greenbrier stopped making interest payments on the loan after FGB commenced this action. (Greenbrier_0000584).

FGB[5] has one claim against Greenbrier for breach of contract. (Ver. Compl. ¶ 11, ECF 1). Under the governing Louisiana substantive law, the essential elements of a breach of contract claim are: (i) the existence of a contract (i.e., the obligor's undertaking of an obligation to perform); (ii) the obligor's breach, or failure to perform, that obligation; and (iii) resulting damages to the obligee. La. Civ. Code Ann. art. 1994; *Abdelqader v. Ramos*, 353 So. 3d 750, 756 (La. App. 4 Cir. 2022), *writ denied*, 358 So.3d 497 (La. 2023); *Sanga v. Perdomo*, 167 So.3d 818, 822 (La. App. 5 Cir. 2014), *writ not considered*, 176 So.3d 1032 (La. 2015), *and writ denied*, 172 So.3d 650 (La. 2015); *Guillory v. Broussard*, 194 So. 3d 764, 780 (La. App. 3 Cir. 2016), *writ denied*, 210 So.3d 806 (La. 2016).

---

[5] FGB is the loan's servicer and administrative agent, and it has properly maintained this action on behalf of all noteholders.

FGB seeks compensatory damages consisting of all amounts owed to it under the loan documents. (Ver. Compl. ¶¶ A-C, ECF 1). As of August 19, 2026, those damages total $52,379,817.04, comprising $35,360,403.41 in unpaid principal, $17,014,913.63 in accrued interest (including interest at the default rate), and $4,500 in accrued late charges, with late charges continuing to accrue and interest continuing to accrue at the default rate of 21% per annum (~$20,626.90 per day) through the date of judgment. (Pl. Summary Judgment Mot., Muehlbauer Aff. ¶ 9, ECF 71-1). FGB is also entitled to recover its costs, expenses, fees, and charges, including reasonable attorneys' fees, incurred in connection with the enforcement of the parties' Promissory Note, capped at twenty-five percent (25%) of the unpaid principal balance, to be sought in a separate post-judgment application. (FGB_0003883).

**ii. Greenbrier's Counterclaim and FGB's Defenses**

Greenbrier has asserted one counterclaim for breach of the implied covenant of good faith and fair dealing. (Greenbrier's Counterclaim ¶¶ 1-8, ECF 45). No other legal theory has been asserted by Greenbrier on account of its counterclaim during this litigation, and no alternate legal theory should be permitted at trial. This action was commenced on July 17, 2024. Now, on the eve of trial, Greenbrier has included additions to the Proposed Integrated Pretrial Order that FGB engaged in "fraudulent and bad-faith conduct in deceiving Defendant into believing that the parties' agreement included no negative pledge that would impede Defendant's ability to refinance." (*Infra* § III.B). At no time prior to this point has Greenbrier asserted a fraud counterclaim or any other counterclaim besides its implied covenant claim. FGB has informed Greenbrier's counsel that it objects to any new, alternative counterclaim—which has not been previously asserted and for which FGB has had no opportunity to take discovery—five weeks before trial.

In its implied covenant counterclaim, Greenbrier contends that FGB breached the implied covenant of good faith and fair dealing by refusing either to amend the loan documents to remove a negative pledge provision that Greenbrier contends was included by mistake or to forgive amounts due under the loan. (Greenbrier's Counterclaim ¶ 7, ECF 45). Greenbrier seeks more than $50 million in damages, premised on the amount of interest Greenbrier purportedly would have saved if it had refinanced its alleged $301 million of debt owed to a third party (Carter Bank) in 2021. (Greenbrier's Counterclaim ¶ 8, ECF 45). Greenbrier's damages calculation assumes: (i) Greenbrier owed Carter Bank $301 million from 2021 to 2026; (ii) the Carter Bank debt had a 10.75% interest rate from 2021 to 2026; and (iii) Greenbrier would have closed a refinancing of the $301 million of Carter Bank debt in 2021 at a 7.5% interest rate if the negative pledge did not exist. (Def. Resp. to Pl.'s First Set of Interrog. ¶ 19). In August 2026, Greenbrier entered into a $500 million transaction with Kennedy Lewis Investment Management that resulted in full repayment of its Carter Bank debt. (Greenbrier_0005265; Stipulation of Voluntary Dismissal with Prejudice at 1, *White Sulphur Springs Holdings, LLC v. Justice*, No. 5:26-cv-00257 (S.D.W. Va. Aug. 14, 2026), ECF No. 116).

Under the governing Louisiana substantive law, the essential elements of a breach of the contractual implied covenant of good faith and fair dealing claim are: (i) the existence of a contract (the obligor's undertaking of an obligation to perform); (ii) the obligor's breach, or failure to perform, that obligation; and (iii) resulting damages to the obligee. La. Civ. Code Ann. art. 1994; *Watson v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 2015 WL 5714635, at *6 (E.D. La. Sept. 29, 2015) (holding that breach of implied covenant "is based on the existence of an underlying contract"); *Brill v. Catfish Shaks of Am., Inc.*, 727 F. Supp. 1035, 1041 (E.D. La. 1989) ("A mere failure to fulfill an obligation, without a showing of intent or ill will, does not constitute a breach

of good faith."); *Favrot v. Favrot*, 68 So. 3d 1099, 1108-1109 (La. App. 4 Cir. 2011), *writ denied*, 62 So.3d 127 (La. 2011) (holding that courts do not examine a party's good faith or bad faith unless and until there is a finding that the party failed to perform an obligation from which the obligee sustained damages).

It is black letter law that the implied covenant "cannot imply an obligation that alters the express terms of a written contract," or impose new terms, which would "essentially rewrite the terms of the contract and allow [a party] to skirt [its] own contractually assumed responsibility." *E.g.*, *Smoothie King Franchises, Inc. v. Southside Smoothie & Nutrition Ctr., Inc.*, 2012 WL 630010, at *4 (E.D. La. Feb. 27, 2012). Thus, a commercial lender is not required to modify a loan's terms under the guise of the implied covenant of good faith. *See, e.g., Whitney Bank v. SMI Companies Glob., Inc.*, 949 F.3d 196, 205 (5th Cir. 2020) (holding lender was not obligated to extend loan maturity date and was not, under the implied covenant, required to continue loan negotiations); *see generally* Gerald L. Blanchard & Rodney A. Morris, Problem Loan Workouts § 4:57 (Good faith and fair dealing) (2d ed. 2026) ("[A] troubled borrower may fervently wish that its lender would enter into a forbearance agreement that waives the existing defaults and provides the debtor with sufficient time to come back into compliance under the loan documents. Unless there is a specific contractual obligation to do so on the lender's part, the refusal of the lender to grant the forbearance does not violate the obligation of good faith and fair dealing.").

Greenbrier's implied covenant counterclaim fails because FGB did not breach any obligation owed to Greenbrier, FGB did not violate the implied covenant of good faith and fair dealing, and Greenbrier has failed to support its counterclaim through admissible evidence (including an adequate foundation and required documentary support). Contrary to Greenbrier's suggestions, FGB was not obligated to modify the loan terms or forgive amounts owed under the

implied covenant of good faith and fair dealing. Moreover, Greenbrier's purported damages were caused by its own inexcusable error—failing to read the loan documents prior to signing—and Greenbrier failed to mitigate its damages by failing to file an action seeking to rescind or reform the Note Addendum to remove the negative pledge.

**B. Greenbrier**

**i. Defense to FGB's Claim**

There is no dispute that Plaintiff First Guaranty Bank ("FGB") loaned unto Greenbrier the principal sum of $35 million; and there is no dispute regarding Greenbrier's repayment obligations set forth in the Note or the payments made by Greenbrier to FGB pursuant to the Note. However, Plaintiff concedes that the Note, and its recovery thereunder, is governed by Louisiana law. See Plaintiff's Memorandum of Points and Authorities (Doc. 72) at 12. As such, the parties' obligations under the note "must be performed in good faith." LA Civ. Code Art.1983 (2025). This duty of good faith and fair dealing requires Plaintiff FGB to refrain from hindering the performance of Defendant Greenbrier, and also to do whatever is necessary to enable Defendant Greenbrier to perform. See Favrot v. Favrot, 68 So.3d 1099, 11209 (La. App. 2011). Here, the record clearly shows that Defendant Greenbrier was struggling to meet its obligations under the Note, and sought the assistance of FGB to modify the terms to avoid default. See Doc. 73-1.

On February 4, 2025, while struggling to meet its obligations under the Note, Greenbrier proposed a modification under which the principal of the loan would be paid in full by December 31, 2026. See Doc. 73-1. There is no evidence that FGB followed up with the Federal Reserve, pressed it for a response, or provided Greenbrier any additional information about the status of the February 4, 2025 proposal. FGB's handling of the February 2025 proposal stands in contrast to its prompt, written handling of a prior request. Had FGB pursued the February 4, 2025 proposal in

good faith, Greenbrier's liability under the Note would have been reduced, and this litigation may have been avoided.

With respect to the damages sought herein by FGB, as an obligee under the Note, FGB "must make reasonable efforts to mitigate the damage caused by the obligor's failure to perform. When an obligee fails to make these efforts, the obligor may demand that the damages be accordingly reduced." LA Civ. Code Art. 2002 (2025). Greenbrier has made such a demand. See Answer and Affirmative Defenses (Doc. 45) at 10. Furthermore, FGB "may not recover damages when [its] own bad faith has caused the obligor's failure to perform. . . . If the obligee's negligence contributes to the obligor's failure to perform, the damages are reduced in proportion to that negligence." LA Civ. Code Art. 2003 (2025).

Plaintiff has failed to join necessary parties, specifically, 1914 Acquisitions LLC and Marblegate Asset Management.

**ii. Greenbrier's Counterclaim**

Prior to signing any documents, Greenbrier had communicated to FGB that it required an unsecured loan without any negative pledge or "anything of that sort that would preclude [Greenbrier] from our refinancing effort" for existing debt. See Doc. 73-6 at 96-98. FGB apparently attempted to meet this demand with a New Loan, see Doc. 73-7, but later and without explanation, whether intentionally or unintentionally, improperly transformed the agreement into a Priority Loan with an Addendum containing a negative pledge, in direct conflict with Greenbrier's stated requirements. FGB maintains that Greenbrier is stuck with what it signed, because Greenbrier also happened to sign a Notice of Final Agreement, which indicates that the loan agreement cannot be contradicted by any prior or contemporaneous ***oral*** agreements. Here, Greenbrier does not rely upon any oral agreement. Rather, Greenbrier maintains that it sought a

New Loan with the ability to refinance existing debt, and signed written certifications and covenants for such a loan, but later, apparently by mutual mistake, also signed certifications and covenants for a loan it did not request. The circumstances are truly extraordinary, and FGB should not be allowed to profit from this mutual mistake.

Alternatively, Plaintiff induced Defendant's alleged default through Plaintiff's fraudulent and bad-faith conduct in deceiving Defendant into believing that the parties' agreement included no negative pledge that would impede Defendant's ability to refinance. Had Defendant been able to refinance, the refinancing would have provided Defendant with excess cash sufficient to pay off the loan and avoid default.

Greenbrier produced an estimate of its damages based upon the personal knowledge of its Vice-President, James C. Justice, III. See Doc. 71-7; see also Doc. 73-6 at 49-51. "Federal Rule of Evidence 701 permits a lay witness—with no need for expert qualification—to give opinion testimony that is 'rationally based on the witness's perception' and helpful to determining a fact in issue." Lord & Taylor, LLC v. White Flint, L.P., 849 F.3d 567, 575 (4th Cir. 2017). "[T]he key to Rule 701 lay opinion testimony is that it must arise from the personal knowledge or firsthand perception of the witness." Id. "Such testimony . . . is admissible under Rule 701 because it is based . . . on 'the particularized knowledge that the witness has by virtue of his or her position in the business.'" Id. at 576 (quoting Advisory Committee's Note to 2000 Amendment); see also Lightning Lube, Inc. v. Witco Corp., 4 F.3d 1153 (3rd Cir. 1993) (finding it proper to permit a business owner to give lay opinion testimony as to damages, as it was based on his knowledge and participation in the day-to-day affairs of the business). As a direct result of FGB's refusal to rescind the Addendum, Greenbrier suffered damage to its existing and potential banking relationships and lost the refinancing it was pursuing, resulting in damages of $48,912,500.

## IV. <u>Contested Issues of Facts and Law</u>

### A. FGB

FGB believes there are no contested issues of fact or law requiring a trial, and summary judgment should be granted to FGB, as set forth in the Summary Judgment Motion. Greenbrier received a $35 million loan from FGB in 2020, the loan is well past maturity, and Greenbrier has only paid FGB approximately $6 million in connection with that loan. (FGB_0003882; Greenbrier_0000584). The loan documents plainly set forth the damages that FGB is entitled to due to Greenbrier's breach: (i) repayment of the outstanding loan principal; (ii) payment of all accrued interest, including default interest following Greenbrier's default; (iii) payment of all accrued late charges; and (iv) reimbursement of FGB's reasonable attorneys' fees (capped at 25% of the principal balance due on the loan). (FGB_0003882). FGB set forth its damages calculation as of August 19, 2026 in the Summary Judgment Motion (ECF 71), and Greenbrier has failed to contest that calculation (*see* ECF 73).

Greenbrier's counterclaim also fails as a matter of law. Greenbrier asserts a single counterclaim for breach of the implied covenant of good faith and fair dealing, alleging that FGB acted in bad faith by refusing to modify the loan documents or forgive amounts owed. (Greenbrier's Counterclaim ¶¶ 1-8, ECF 45).

Under Louisiana law, a claim for breach of the implied covenant of good faith and fair dealing requires: (i) the existence of a contractual obligation; (ii) a breach of that obligation; and (iii) resulting damages. La. Civ. Code art. 1994; *Watson v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 2015 WL 5714635, at *6 (E.D. La. Sept. 29, 2015). The implied covenant is not an independent source of obligations; rather, it depends on the existence of an underlying contractual duty. *Watson v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 2015 WL 5714635, at *6 (E.D. La.

Sept. 29, 2015). Courts do not evaluate a party's good faith unless there has first been a failure to perform a contractual obligation that caused damages. *Favrot v. Favrot*, 68 So. 3d 1099, 1109 (La. App. 4 2011), *writ denied*, 62 So.3d 127 (La. 2011). Moreover, "[a] mere failure to fulfill an obligation, without a showing of intent or ill will, does not constitute a breach of good faith." *E.g.*, *Brill v. Catfish Shaks of Am., Inc.*, 727 F. Supp. 1035, 1041 (E.D. La. 1989).

The implied covenant cannot be used to alter the express terms of a contract or impose obligations not contained in the parties' agreement. *E.g.*, *Smoothie King Franchises, Inc. v. Southside Smoothie & Nutrition Ctr., Inc.*, 2012 WL 630010, at *4 (E.D. La. Feb. 27, 2012). Accordingly, a lender has no duty, under the guise of good faith and fair dealing, to modify loan terms, extend maturities, grant a forbearance, or continue negotiating a restructuring absent a contractual obligation to do so. *Whitney Bank v. SMI Companies Glob., Inc.*, 949 F.3d 196, 211 (5th Cir. 2020); Gerald L. Blanchard & Rodney A. Morris, *Problem Loan Workouts* § 4:57 (2d ed. 2026).

Greenbrier's claim therefore fails for several independent reasons. First, FGB did not breach any contractual obligation owed to Greenbrier. Second, FGB's declination to modify the loan documents or to forgive debt cannot, as a matter of law, constitute a breach of the implied covenant of good faith and fair dealing. Third, Greenbrier cannot establish its counterclaim or its damages through admissible evidence, including because its purported damages lack an adequate evidentiary foundation and the necessary documentary support. Finally, any alleged damages were caused by Greenbrier's own conduct, including its failure to read the loan documents before signing them and its failure to pursue available remedies, such as an action seeking to rescind or reform the Note Addendum to remove the negative pledge.

**B. Greenbrier**

The factual and legal basis for Greenbrier's claims and defenses are discussed in more detail in the Response to FGB's Summary Judgment Motion, Greenbrier's forthcoming Proposed Findings of Fact and Conclusions of Law, and Section III(B) herein.

With respect to the damages sought herein by FGB, as an obligee under the Note, FGB "must make reasonable efforts to mitigate the damage caused by the obligor's failure to perform. When an obligee fails to make these efforts, the obligor may demand that the damages be accordingly reduced." LA Civ. Code Art. 2002 (2025). Greenbrier has made such a demand. See Answer and Affirmative Defenses (Doc. 45) at 10. Furthermore, FGB "may not recover damages when [its] own bad faith has caused the obligor's failure to perform. . . . If the obligee's negligence contributes to the obligor's failure to perform, the damages are reduced in proportion to that negligence." LA Civ. Code Art. 2003 (2025). Had FGB pursued Greenbrier's proposal in good faith, Greenbrier's liability under the Note would have been reduced, and this litigation may have been avoided. FGB should not be allowed to profit from its own bad faith.

Regarding the counterclaim, Greenbrier sought a loan with the ability to refinance existing debt, and signed written certifications and covenants for such a loan, but later, apparently by mutual mistake, also signed certifications and covenants for a loan it did not request. The circumstances are truly extraordinary, and FGB should not be allowed to profit from this mutual mistake. The improper loan contained an Addendum with a negative pledge, in direct conflict with Greenbrier's stated requirements. The negative pledge was a substantial factor in Greenbrier's failure to close its refinancing. FGB's breach was therefore a direct and proximate cause of Greenbrier's damages.

## V. Stipulations

### A. FGB

FGB believes the parties can stipulate to the authenticity and admissibility of the following documents:

1. The loan documents executed by Greenbrier on December 22 and 23, 2020, including the: (i) Promissory Note (FGB_0003882-84); (ii) Addendum to Promissory Note For Use with MSNLF or MSPLF Loans (FGB_0003877-78); (iii) Main Street Priority Loan Facility Borrower Certifications and Covenants (FGB_0003842-59); (iv) Co-lender Agreement (FGB_0000098-103); (v) Assignment and Assumption for the Main Street Lending Program (FGB_0000003-08); (vi) Corporate Resolution to Borrow / Grant Collateral (FGB_0003874-75); (vii) Certification of Beneficial Owner (FGB_0003876); (viii) Disbursement Request and Authorization (FGB_0003888); (ix) Notice of Final Agreement (FGB_0003879); and (x) Credit Agreement letter with transmittal email (GREENBRIER_0001512-16).

2. Change in Terms Agreement dated June 22, 2023 (FGB_0003816).

3. Main Street Priority Loan Facility Borrower Certifications and Covenants executed by Greenbrier (FGB_0003519-35; FGB_0002426; FGB_0002296).

4. Greenbrier's records of payments made by Greenbrier with respect to the loan at issue (Greenbrier_0000584).

FGB believes that the parties can further stipulate that:

1. Direct testimony will be submitted by affidavit.

2. Greenbrier received a $35 million loan from FGB on or around December 29, 2020, and the loan is governed by loan documents executed on December 22 and 23, 2020, including the: (i) Promissory Note; (ii) Addendum to Promissory Note For Use with MSNLF or MSPLF Loans; (iii) Main Street Priority Loan Facility Borrower Certifications and Covenants; (iv) Co-lender Agreement; (v) Assignment and Assumption for the Main Street Lending Program; (vi) Corporate Resolution to Borrow / Grant Collateral; (vii) Certification of Beneficial Owner; (viii) Disbursement Request and Authorization; (ix) Notice of Final Agreement, and (x) Credit Agreement letter.

3. The loan matured no later than December 22, 2025.

4. With respect to the $35 million loan, Greenbrier has paid $6,019,386.00 to date.

5. Greenbrier's last payment with respect to the loan was on April 4, 2024.

6. Greenbrier has made no payments with respect to the loan since FGB commenced this action.

7. Louisiana substantive law governs FGB's breach of contract claim, Greenbrier's counterclaim, and defenses to that claim and counterclaim.

8. Greenbrier's representatives who executed the loan documents on December 22 and 23, 2020 (including the Promissory Note, Addendum to Promissory Note For Use with MSNLF or MSPLF Loans, Main Street Priority Loan Facility Borrower Certifications and Covenants, Co-lender Agreement, Assignment and Assumption for the Main Street Lending Program, Corporate Resolution to Borrow / Grant, Disbursement Request and Authorization, Notice of Final Agreement, Credit Agreement letter, and Certification of Beneficial Ownership) had authority to execute such documents on Greenbrier's behalf.

9. Greenbrier's sole counterclaim is for breach of the implied covenant of good faith and fair dealing.

FGB further notes that the parties have already stipulated that:

1. The parties are precluded from proffering or otherwise introducing into evidence expert testimony or reports.

2. Each party is precluded from proffering or otherwise introducing into evidence any documentary evidence that was (a) not previously produced in discovery, and (b) responsive to the opposing party's discovery requests or which was otherwise required to be produced in discovery.

3. The parties are precluded from proffering or otherwise introducing parol evidence (extrinsic or otherwise) to change, add to, modify, or amend the terms of a final, written contract. Provided, however, that: (i) the preclusion of parol evidence does not prevent Greenbrier from seeking to proffer or otherwise introduce evidence of a mutual mistake among the contracting parties concerning the inclusion of the negative pledge in the Addendum to Promissory Note For Use with Main Street MSNLF or MSPLF Loans (FGB_0003877-78); and (ii) nothing in this Stipulation prevents FGB from objecting to the introduction of such evidence.

FGB further notes that FGB cannot stipulate to the authenticity or admissibility of a document to which it is not a party, including emails that do not include a representative of FGB.

**B. Greenbrier**

Greenbrier believes the parties can stipulate to the authenticity and admissibility of the following documents:

1. FGB items 1-4.
2. Emails between Jay Justice and Michael Mineer (Doc. 73-1).
3. Emails between Jay Justice and Michael Mineer (Doc. 73-2).
4. Emails between Jay Justice and Michael Mineer (Doc. 73-3).
5. Emails between Jay Justice and Michael Mineer (Doc. 73-4).
6. New Loan Borrower Certifications and Covenants executed by Greenbrier (Doc. 73-7).
7. Emails between Jay Justice and Dev Patel (Doc. 73-10).
8. Emails between Jay Justice and Adam Lerrick (Doc. 73-11).

Greenbrier believes that the parties can further stipulate that:

1. FGB items 3-7.

Greenbrier concurs that the parties have already stipulated to FGB items 1-3.

## VI. Suggestions to Avoid Unnecessary Proof and Cumulative Evidence

**A. FGB**

To streamline the trial, FGB suggests that the parties present direct testimony via affidavit in advance of trial, while cross and re-direct testimony would be live. FGB further suggests that the parties exchange proposed expected and potential exhibits lists for their case-in-chief—excluding exhibits intended for use solely for rebuttal or impeachment purposes—reasonably in

advance of trial, with the parties reserving the right to amend their lists, so that the parties can create a joint exhibit list and binders for use at trial and streamline the presentation of evidence.

**B. Greenbrier**

None at this time.

## VII. Suggestions for Special Procedures

**A. FGB**

None.

**B. Greenbrier**

None at this time.

## VIII. Special Voir Dire Questions

**A. FGB**

Not applicable; this is a bench trial.

**B. Greenbrier**

None

## IX. Estimate of Trial Duration

**A. FGB**

Depending on the issues that remain to be resolved after the Court ruling on the Summary Judgment Motion, the number of witnesses that are called, and whether direct testimony will be live or via affidavit, FGB estimates that trial should take one to three days.

**B. Greenbrier**

Greenbrier concurs 1-3 days.

## X. Courtroom Technology

### A. FGB

If needed, FGB requests that the Court allow it to: (i) share PowerPoint or other slides on a large screen viewable to the Court and counsel using its trial technology vendor; and (ii) use an easel for physical demonstratives.

### B. Greenbrier

If needed, Greenbrier requests that the Court allow it to: (i) share powerpoint or other slides on a large screen viewable to the Court and counsel using its trial technology vendor; and (ii) use an easel for physical demonstratives.

## XI. Any Other Relevant Matters

### A. FGB

FGB may enlarge certain exhibits, or portions thereof, to make them easier for the Court and witnesses to read.

### B. Greenbrier

None at this time.

Dated: November 2, 2026

Respectfully submitted,

**FIRST GUARANTY BANK**

By counsel,

/s/ *Seth P. Hayes*

Seth P. Hayes, Esq. (WVSB #10381)
JACKSON KELLY PLLC
3000 Swiss Pine Way, Suite 200
P.O. Box 619
Morgantown, WV 26501
shayes@JacksonKelly.com

and

M. Shane Harvey (WVSB# 6604)
JACKSON KELLY PLLC
500 Lee Street East, Suite 1600
P.O. Box 553
Charleston, WV 25301-3202
sharvey@jacksonkelly.com

and

HERRICK FEINSTEIN LLP
Sean E. O’Donnell
Elizabeth Plowman
Timothy M. Whitteaker
Two Park Avenue
New York, NY 10016
sodonnell@herrick.com
eplowman@herrick.com
twhitteaker@herrick.com
(212) 592-1400
*pro hac vice* applications pending

**GREENBRIER HOTEL CORPORATION**

By counsel,

/s/ *Ronald H. Hatfield, Jr.*

Ronald H. Hatfield, Jr. (WVSB No. 8552)
General Counsel – Litigation
101 Main Street, West
White Sulphur Springs, WV 24986
Tel: 540-613-5795
Fax: 540-301-5527
ron.hatfield@bluestone-coal.com

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF WEST VIRGINIA**

| | |
|---|---|
| FIRST GUARANTY BANK,<br><br>Plaintiff,<br><br>v.<br><br>GREENBRIER HOTEL CORPORATION,<br><br>Defendant. | Case No.: 5:25-cv-00687<br><br>Hon. Frank W. Volk, Chief Judge |

**CERTIFICATE OF SERVICE**

The undersigned counsel for First Guaranty Bank hereby certifies that a copy of the foregoing “Proposed Integrated Pretrial Order” was served upon all known parties and counsel of record via the Court’s CM/ECF system on November 2, 2026.

/s/ *Seth P. Hayes*

Seth P. Hayes, Esq. (WVSB #10381)