**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**
**AT BECKLEY**

FIRST GUARANTY BANK,

Plaintiff,

v. CIVIL ACTION NO. 5:25-cv-00687

GREENBRIER HOTEL, LLC,

Defendant.

## MEMORANDUM OPINION AND ORDER

Pending is Plaintiff First Guaranty Bank's ("FGB") Motion for Summary Judgment [ECF 71], filed August 19, 2026. On September 2, 2026, Defendant Greenbrier Hotel, LLC ("Greenbrier") responded in opposition [ECF 73], to which FGB replied on September 9, 2026. [ECF 74].

### I.

On July 17, 2024, FGB instituted this action in the United States District Court for the Middle District of Louisiana. [ECF 1]. On November 12, 2024, Greenbrier moved to dismiss or, alternatively, transfer venue to the Southern District of West Virginia. [ECF 21]. On September 30, 2025, Greenbrier's motion was granted insofar as it sought transfer and denied as to its residue. [ECF 30]. On November 21, 2025, the matter was transferred to this District for disposition. On December 30, 2025, FGB amended its Complaint, alleging breach of contract and seeking amounts due from Greenbrier under the terms of the Main Street Loan and Promissory Note executed between the parties. [ECF 40]. The undisputed facts are as follows.

On December 22, 2020, FGB loaned Greenbrier $35,000,000 under the provisions of the Main Street Lending Program of the Federal Reserve, authorized by the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"). [ECF 40 at ¶¶ 6, 7]. That same date, Greenbrier executed a Promissory Note (the "Note"), under which it agreed to repay FGB the principal amount of the Main Street Loan ("the Loan"), together with interest at an indexed variable rate and other amounts as provided therein. [*Id.* at ¶ 6]. The Note was accompanied by an attached Addendum entitled "Addendum to Promissory Note For Use With Main Street MSNLF or MSPLF Loans," containing the following Negative Pledge restriction:

> 4. NEGATIVE PLEDGE. Borrower covenants that, for so long as the Note is outstanding, Borrower will not, nor will it permit any subsidiary to, create, incur, assume or suffer to exist any Lien upon any of its property, assets or revenues, whether now owned or hereafter acquired, securing any debt for borrowed money or any obligations evidenced by a bond, debenture, note, loan agreement or other similar instrument, or any guarantee of the foregoing, other than the following:
> (a) Liens securing obligations under the Note and other indebtedness in favor of Lender;
> (b) Liens on real property in connection with loans with respect to which substantially all of the proceeds were used for acquisition, construction, fit-out, and/or renovation of the property; or
> (c) Liens on receivables assets and related assets incurred in connection with a receivables facility, provided that such debt is secured only by the newly acquired property.

[ECF 71-1 at 8]. Neither principal nor accrued interest payments were due from Greenbrier during the Loan's first year. [ECF 40 at ¶ 9]. The Note's terms, however, required all accrued interest during the first year be capitalized and added to the principal amount of the Loan on the first anniversary of the Loan date, namely, December 22, 2021. [*Id.*]. The Note contains a Louisiana choice-of-law provision, which the parties agree governs the instant dispute. [ECF 71-1 at 6; *see also* ECF 72 at 12 (FGB recognizing "the Note is governed by Louisiana law[.]"); ECF 73 at 2 (Greenbrier recognizing "the Note, and [FGB's] recovery thereunder, is governed by Louisiana law.").

Beginning January 22, 2022, the Note further required Greenbrier to make monthly interest payments as interest accrued on the unpaid principal of the Loan. [ECF 40 at ¶ 9]. Additionally, the Note required Greenbrier to repay the principal -- inclusive of the capitalized interest -- in three installments over a three-year period as follows: (1) 15% of the outstanding principal on December 22, 2023, (2) another 15% of the outstanding principal on December 22, 2024, and (3) the entirety of the outstanding principal, together with all remaining unpaid accrued interest, charges, and fees, on December 22, 2025. [*Id*. at ¶ 10]. On December 22, 2023, Greenbrier defaulted when it failed to remit the first 15% installment payment on the Loan's outstanding principal balance in accord with the Note's terms. [*Id*. at ¶ 11]. Prior to default, Greenbrier had irregularly tendered accrued interest payments to FGB, the majority of which were untimely under the Note. [ECF 72 at 4]. After April 2024, however, Greenbrier ceased payment altogether and has "made no further payments of principal or accrued interest as contemplated by the Note, or otherwise." [*Id*.]. As of August 19, 2026, the following amounts remain outstanding under the Note: (1) $35,360,403.41 in principal, (2) $17,014,913.63 in accrued interest, and (3) $4,500.00 in accrued late fees. [*Id*.]. Interest continues to accrue on the unpaid principal "at the default rate of 21.00% *per annum*, or $20,626.901989167 *per diem*." [ECF 40 at ¶ 16].

As a result of Greenbrier's failure to abide by the Note's payment schedule, FGB's operative Complaint alleges a single breach of contract claim. [*Id*. at ¶¶ 17-20]. FGB seeks judgment against Greenbrier in the aggregate amount of $52,379,817.04, plus interest at the rate above, from August 19, 2026, through disposition. [ECF 72 at 11]. As contemplated by the Note's terms and conditions, FGB also seeks recovery of its attorney fees, costs, and related expenses in connection with its enforcement of the Note. [ECF 40 at ¶¶ 14-16].

On February 5, 2026, Greenbrier counterclaimed, contending FGB violated its duty of good faith and fair dealing by failing to rescind the Note's Addendum containing the "negative pledge that restricts . . . Greenbrier's assets and access to alternative or additional financing arrangements." [ECF 45 at ¶ 5]. Greenbrier alleges the Loan at issue was never intended to be a Main Street *Priority* Loan but, rather, a Main Street *New* Loan, and thus "the inclusion of the Addendum to the Note . . . was a mistake and never agreed to by [Greenbrier]." [*Id.* at ¶ 4]. In support of this assertion, Greenbrier emphasizes though the documents executed on December 22, 2020, included the Main Street *Priority* Loan Borrower Certifications and Covenants, Greenbrier also executed the Main Street *New* Loan Borrower Certifications and Covenants eight days earlier on December 14, 2020.[1] [*Compare* ECF 71-5 *with* ECF 73-7]. Given FGB's refusal to rescind the Addendum after Greenbrier notified it of the alleged mistake, Greenbrier counterclaims FGB breached its duty of good faith and fair dealing. [*Id.* at ¶ 7]. Greenbrier alleges FGB's breach has damaged Greenbrier's "existing and other potential banking relationships, resulting in financial damage to . . . Greenbrier in excess of $50,000,000.00." [*Id.* at ¶ 8].

On August 19, 2026, FGB moved for summary judgment on its breach of contract claim and Greenbrier's counterclaim. [ECF 71]. Respecting its breach of contract claim, FGB asserts summary judgment is warranted inasmuch as there is no dispute as to (1) Greenbrier's payment obligations under the loan, (2) Greenbrier's breach of those obligations, and (3) FGB's damages as a result of that breach. [*See* ECF 72 at 10-11]. FGB likewise contends it is entitled to summary judgment on Greenbrier's counterclaim inasmuch as (1) the record is devoid of any evidence to support its underlying premise "that the inclusion of the 'negative pledge' provision

[1] Aside from their respective titles, it is noted these documents are identical in all other respects.

in the Addendum to the Note was a mutual mistake," [ECF 72 at 11] given that Greenbrier's President Jillian Justice admitted she failed to read or review the loan documents prior to executing the same, and (2) even if mistake could be proven, Greenbrier failed to adduce sufficient evidence demonstrating the negative pledge provision caused it to suffer damages. [*Id*. at 14-17]. Respecting the purported restrictive impact of the negative pledge provision, FGB further emphasizes Greenbrier's contention on this point is directly belied by a declaration executed by Mr. James C. Justice, III in another case previously pending before the undersigned, namely, *White Sulphur Springs Holdings, LLC v. James C. Justice, II, et al.*, No. 5:26-cv-00257. [*See* ECF 71-11 at ¶¶ 3-4, 4 n.1, 10-11, 21]. FGB contends Mr. Justice's declaration (1) "acknowledges that . . . Greenbrier, as one of the Borrowing Entities, in fact *was able* to arrange financing commitments notwithstanding the 'negative pledge' provision in the Addendum to the Note; and further," (2) "assigns blame to Carter Bank, not FGB, for the inability of Greenbrier to refinance its debt." [ECF 72 at 15 (emphasis in original)].

Additionally, FGB highlights, in that same matter, "Greenbrier publicly announced the completion of a $500 million joint venture agreement with Kennedy Lewis Investment Management, a New York-based financial firm, which agreement apparently enabled Greenbrier to pay off its massive debt to White Sulphur Springs Holdings, LLC, the purchaser of the debt formerly held by Carter Bank." [*Id*.].[2] FGB maintains Greenbrier's ability to complete that transaction, notwithstanding the negative pledge provision at issue herein, only further "confirms that Greenbrier cannot prove causation" on its asserted counterclaim. [*Id*.].

---

[2] On August 14, 2026, the *White Sulphur Springs* litigation was dismissed following the joint venture agreement and the parties' Stipulation of Voluntary Dismissal with Prejudice. [*See* ECF 116 in 5:26-cv-00257].

Greenbrier rejects FGB's assertions. As to FGB's breach of contract claim, though Greenbrier does not contest it breached the Note's payment schedule, it maintains summary judgment is improper inasmuch as FGB breached its duty of good faith and fair dealing by declining Greenbrier's modification request that would have cured the breach altogether. [*See* ECF 73 at 2-4]. Respecting its counterclaim, Greenbrier maintains extraordinary circumstances exist that should prevent FGB from profiting from the purported mutual mistake. [*Id*. at 4-6]. It likewise contends its estimated damages calculation -- based on the personal knowledge of its Vice President James C. Justice, III -- is sufficient to create a triable issue on damages. [*Id*. at 6-8; see also ECF 71-7 at 9]. Notably, Greenbrier does not acknowledge FGB's contentions respecting the *White Sulphur Springs* litigation.

**II.**

*Federal Rule of Civil Procedure* 56 provides that summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The burden is on the nonmoving party to show that there is a genuine issue of material fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 246 (1986). "The nonmoving party must do so by offering 'sufficient proof in the form of admissible evidence' rather than relying solely on the allegations of her pleadings." *Guessous v. Fairview Prop. Invs., LLC*, 828 F.3d 208, 216 (4th Cir. 2016) (quoting *Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1316 (4th Cir. 1993)).

The Court must "view the evidence in the light most favorable to the [nonmoving] party." *Tolan v. Cotton*, 572 U.S. 650, 657 (2014) (internal quotation marks and citation omitted); *Variety Stores, Inc. v. Wal-Mart Stores, Inc.*, 888 F.3d 651, 659 (4th Cir. 2018). "The court . . . cannot weigh the evidence or make credibility determinations." *Jacobs v. N.C. Admin. Off. of the*

*Courts*, 780 F.3d 562, 569 (4th Cir. 2015); *see Lee v. Town of Seaboard*, 863 F.3d 323, 327 (4th Cir. 2017). In general, if "an issue as to a material fact cannot be resolved without observation of the demeanor of witnesses in order to evaluate their credibility, summary judgment is not appropriate." Fed. R. Civ. P. 56 advisory committee's note to 1963 amendment.

## III.

### *A. FGB's Breach of Contract Claim*

As noted, Greenbrier does not dispute it breached the Note's terms by failing to satisfy its repayment obligations. Instead, Greenbrier asserts FGB violated its duty of good faith and fair dealing by declining to modify the terms of the Note as proposed by Greenbrier in February 2025, which would have purportedly cured Greenbrier's default. [*See* ECF 73 at 3 ("There is no question that Greenbrier's February 4, 2025, proposal would have reduced liability under the Note, or perhaps may have eliminated the necessity of this litigation.")].

Specifically, Greenbrier asserts its proposal to FGB requested the Note be modified to allow Greenbrier to repay the entirety of the Loan's outstanding principal by December 31, 2026. Greenbrier contends FGB informed it the modification request was conveyed to the Federal Reserve, but Greenbrier never received a definitive response to the proposal. Greenbrier maintains "[t]his situation raises a question of fact concerning FGB's efforts to meet its obligation of good faith, to do whatever is necessary to enable . . . Greenbrier to perform." [ECF 73 at 3]. Greenbrier emphasizes this point, despite acknowledging FGB's Chief Executive Officer testified in his deposition that the Federal Reserve ultimately rejected the modification request after telephonic discussions with FGB. [*See* ECF 73 at 3 (quoting ECF 73-5 at 25-26) ("FGB's Chief Executive Officer has testified that '[t]here were phone calls [with the Federal Reserve] eventually that just said they can't do it,' but he also admitted that the Federal Reserve 'never gave [FGB] anything in

writing.'")].

Additionally, Greenbrier appears to assert FGB's failure to modify the Note's terms in accord with Greenbrier's proposal constitutes a failure to mitigate its asserted damages. [*Id.* at 3]. Reduced to its essence, Greenbrier contends "[t]here are insufficient facts in the record upon which this Court could make a determination, at this stage of the litigation, that FGB satisfied its obligation of good faith and fair dealing under Louisiana law," rendering summary judgment inappropriate. Greenbrier's assertions are unavailing.

"Generally, Louisiana law governing obligations provides that good faith shall govern the conduct of parties in whatever pertains to the obligation, and all contracts in Louisiana must be performed in good faith." *Gulf Coast Bank & Tr. Co. v. Warren*, 125 So. 3d 1211, 1219 (La. Ct. App. 4th Cir. 2013) (citing La. Civ. Code art. 1759, La. Civ. Code art. 1983). Critically, however, "Louisiana does not recognize a separate and distinct obligation of good faith, the breach of which would be equivalent to a breach of the contract between the parties." *Id.* (citing *Favrot v. Favrot*, 68 So. 3d 1099, 1107 (La. Ct. App. 4th Cir. 2011)). Indeed, though "[t]he performance of an obligation or contract can be characterized as being in good faith or bad faith, . . . the party alleging bad faith performance must first allege facts revealing the duty to perform an obligation." *Id.* Louisiana's Fourth Circuit Court of Appeals expounded on this principle in *Favrot* as follows:

> Judicial inquiry . . . into an obligor's (or even in some cases an obligee's) good-faith performance of the obligation is not triggered by the morality of a party's intentions, but is initiated only when the obligee has proven a *failure to perform* an obligation. Stated another way, we do not examine a party's good faith (or bad faith) *unless and until* we find that the party has failed to perform an obligation, from which the obligee has sustained damages . . . The extent of the obligee's recoverable damages is then determined according to whether the obligor failed to perform in good faith or bad faith . . . Thus, judicial determination of good-faith (or bad-faith) failure to perform a conventional obligation is always preceded by a finding that there was a failure to perform, or a breach of the contract.

68 So. 3d at 1109 (emphases in original); *see also Lamar Contractors, Inc. v. Kacco, Inc.*, 189 So.

3d 394, 398 (La. 2016) (recognizing the "general duty of good faith [-- imposed by La. Civ. Code art. 1983 --] cannot be considered in isolation. Rather, it is necessarily regulated and circumscribed by the obligations imposed by the parties' contract.").

The Court is thus tasked with determining whether the facts alleged by Greenbrier demonstrate FGB's failure to perform a specific obligation under the terms of the Note that would constitute a breach thereof. The gravamen of Greenbrier's contention supposes FGB possessed a duty to accept Greenbrier's modification request to prevent and/or cure Greenbrier's default. Greenbrier does not direct the Court to the contractual or bargained-for source of this purported obligation. Indeed, at no point does Greenbrier assert FGB owed any such duty under the Note's terms, nor does a review of the loan documents provide as much.

There is thus no legal basis to support Greenbrier's contention that FGB breached the implied covenant of good faith and fair dealing absent an obligation under the Note's terms requiring FGB to accept Greenbrier's modification request.[3] Inasmuch as it is undisputed Greenbrier breached the Note's terms by failing to satisfy its repayment obligations, FGB is entitled to summary judgment on its breach of contract claim.

***B. Greenbrier's Breach of Good Faith and Fair Dealing Counterclaim***

The parties devote much space to Greenbrier's mutual mistake contention; they do so unnecessarily. Indeed, the crux of Greenbrier's counterclaim is FGB violated the covenant of good faith and fair dealing by not rescinding the Note's Addendum containing the negative pledge

---

[3] There is likewise no support for the contention FGB failed to mitigate its damages under La. Civ. Code art. 2002 by failing to accept Greenbrier's modification proposal. Indeed, though Louisiana law requires an injured party to make reasonable efforts to mitigate its damages following a breach, mitigation does not require the non-breaching party to cure that breach once it has occurred. Simply put, an injured plaintiff's duty to mitigate its damages requires only that reasonable steps be taken "to minimize the consequences of the injury[,]" not the injury itself. *Maloney Cinque, L.L.C. v. Pacific Ins. Co., Ltd.*, 89 So. 3d 12, 31 (La. Ct. App. 4th Cir. 2012).

provision upon notification the provision's inclusion was purportedly a mistake. As explained above, however, Louisiana law does not recognize a separate obligation of good faith that does not arise from the parties' obligations under a contract. That incontestable rule warrants dismissal of Greenbrier's counterclaim; it has not identified a material contractual obligation requiring FGB to rescind the Note's Addendum.

**IV.**

Based on the foregoing discussion, and the entirety of the evidentiary record, FGB's Motion for Summary Judgment [**ECF 71**] is **GRANTED**.[4]

The Clerk is directed to send a copy of this written opinion and order to counsel of record and to any unrepresented party.

ENTER: November 18, 2026

Frank W. Volk
Chief United States District Judge

[4] Considering this ruling, FGB's Motion to Strike And Preclude Greenbrier's Untimely Fraud Claim or Defense [**ECF 94**] is **DENIED AS MOOT**.